Mr. Ravelo versus the United States. We'll be pleased to hear from Mr. Dominguez. Good morning, Your Honors. Anthony Dominguez on behalf of Appellant Arnaldo Ravelo. May it please the Court. Appellant Arnaldo Ravelo cannot be in the United States pursuant to 8 U.S.C. 1182 A-9 B-I-2, what is commonly and colloquially referred to as the departure bar, because he did not make a legal departure from the United States on April 24, 2012. You can start any way you want, but I think you need to start with the jurisdiction question. There's a serious question in this case of your clients and they hold that there is jurisdiction. Two circuits say there is not jurisdiction. Tell us why we should hold there is jurisdiction in this case. Well, Your Honor, in this case we are dealing with a specific question of statutory eligibility. The Eleventh Circuit has held in Mejia and Camacho-Perez v. USCIS that the Court of Eligibility decisions, these statutory eligibility decisions are completely different than . . . Yeah, I agree with you. It's a question of law and we can review that, but the heart of jurisdictional question here is whether he's exhausted his administrative remedies and whether or not that's what the circuit split is over. Whether or not you have to wait till there's some removal proceedings or something's going to be going on. Yes, Your Honor. Here it's just he's got an agency denial, but they're not seeking to deport him and he could bring up this same claim in those proceedings. So is it premature? I think that's the jurisdiction issue. Is that right? Your Honor, respectfully, it is appellant's contention that his claim is not premature, that he does have jurisdiction to review the negative statutory eligibility decision by USCIS over his Cuban Adjustment application. The one other method he would have potentially is a motion to reopen or a . . . before the agency, before USCIS. However, this is not required to file this and . . . But he's not in deportation, right? Correct. Okay, there is . . . So they'd have to file a notice to deport against him and then he wouldn't have to file a reopen. He'd file a response in that proceeding, which has not happened yet. Correct, Your Honor. However, the 11th Circuit has specifically held in Camacho-Perez v. USCIS that petitioners in this situation can challenge statutory eligibility decisions made by USCIS after the denial of a Cuban Adjustment application. We did say in Abaro v. Huacena, we do not have before us and therefore do not decide whether we have jurisdiction under the APA if the alien has not yet been placed in removal proceedings. So we've never decided that question in this circuit, have we? It is appellant's contention that this question was decided. Mr. Rivelo did allege jurisdiction under the Federal Question Jurisdiction in addition to the Administrative Proceedings Act. I understand that. Yes, it is appellant's contention that in Camacho-Perez, this Court specifically held that an appellant can or a petitioner can review a statutory eligibility decision made by USCIS over a Cuban Adjustment application prior to the filing of any notice to appear in immigration proceedings. He wants LPR status. That is correct, Your Honor. If he were in removal proceedings, could he seek LPR status? No. Mr. Rivelo is considered an arriving alien. In Camacho-Perez, this Court specifically discussed that an arriving alien, when they are placed in removal proceedings, while the immigration judge does have jurisdiction to order that alien removed, the immigration judge does not have jurisdiction to grant an arriving alien's Cuban Adjustment application. In other words, even if Mr. Rivelo was to be given a notice to appear and appear in the immigration judge, the immigration judge could order him removed, but the immigration judge could not adjudicate his Cuban Adjustment application. That is the same situation that happened in Camacho-Perez versus USCIS before the 11th Circuit. If the immigration judge cannot adjudicate his Cuban Adjustment application, the only form in which his Cuban Adjustment application can be adjudicated is with USCIS. Therefore, this negative statutory eligibility decision made by USCIS, the only method to review that is through a federal complaint alleging federal question jurisdiction in addition to at the Administrative Procedures Act. So even though he overstayed his parole after it expired and was here illegally, he's still considered an arriving alien? That is correct. He was never admitted to the United States. All parolees are unadmitted. Right. Okay. In this removal proceeding, can he be paroled through the removal proceeding? I believe it is the Department of Homeland Security, based on our practice, that once removal proceedings are instituted, it is their policy not to then parole someone again into the United States. Although Mr. Rivelo physically departed the United States for the purposes of 1182A9EI2, what is referred to as the departure bar, he did not legally depart the United States because he was never considered, quote, legally within the United States due to his grant of indefinite parole under 8 U.S.C. 1182D5, given to him by USCIS on November 9th, 2005. Now, the effect of this 1182D5 parole is well known to this court and effectively resolves the issue before in this case in regards to Mr. Rivelo's alleged admissibility. Mr. Rivelo's grant of indefinite parole from November 9th, 2005 resolves the issue of an admissibility in this case because of the doctrine this court termed the entry doctrine fiction or the entry fiction in Jeanne v. Nelson, an 11th Circuit court case from 1984 in which this court held that certain Haitian nationals did not have an equal protection claim. I'm not following you at all. You're going to have to walk me back. November 9, 2005, he obtained indefinite parole. Okay. So what does that mean? An indefinite parole pursuant to 8 U.S.C. 1182D5 is a humanitarian grant. It's a grant that basically the petitioner is allowed to be physically present in the United States. This court discussed the effect of a parole in Jeanne v. Nelson, 11th Circuit case from 1984, in which this court specifically endorsed the opinion of Justice Clark from Lang May Ma v. Barber. Okay. Say that again. He's here in the United States, but he's not... He is while physically present in the United States. Physically present. Supreme Court precedent holds that he is not, quote, legally within the United States, end quote. Justice Clark from the Supreme Court in the 1958 case Lang May Ma v. Barber specifically held that it would be inconsistent with the congressional mandate, the administrative concept of parole, and the jurisprudence of the Supreme Court to hold that individual who is paroled in the United States is, quote, legally within the United States, end quote. In Lang May Ma v. Barber... But then how does that relate to when he goes to Canada and he's got to accrue illegal presence for the other application? I thought that had to be illegal presence. So Mr. Ravello did accrue unlawful presence or illegal presence in the 90s prior to receiving his grant of indefinite parole. So the time that he spent unlawfully in the United States was prior to receiving the parole... From 92 to 2005. Well, actually, illegal presence started to accrue after the passage of IRA-IRA in 1997. So it would have been from 1997 to 2002 when he submitted his Cuban Adjustment application, his first Cuban Adjustment application. That was the accrual of unlawful presence. However, although he accrued unlawful presence, that unlawful presence can only be used against him when it is triggered by a legal departure pursuant to 8 U.S.C. 1182 A9BI2, or what is referred to as the departure bar. It is not the fact whether he accrued that unlawful presence here in the United States. For instance, an alien, in order for this bar to be applied to them, they must legally and physically depart the United States. Here Mr. Ravello physically departed the United States on April 24, 2012. But because he was previously under a grant of indefinite parole, the case law clearly defines that a parole does not change a legal status of the alien. And that under a parole, they are not, quote, legally within the United States, end quote, to quote Justice Clark in Lange-Mae Mavers Barber. Therefore, Mr. Ravello in Lange-Mae Mavers. So because he didn't legally depart, it doesn't break the chain? Is that what you're saying? That is correct. But somebody who legally departed would then be in a worse case. Yes. Someone who did not have this parole when they departed would be in a- How old was he when he came here in 1992? How old? Was he, he came here November 25, 1992. Correct. I do not have his age at that time. Well, how old is he now? I believe he's in his 40s or 50s. I'm sorry, Honor. I do not have his age at this time. Do you know a date of birth? Maybe the government can tell me a date of birth. I'm just curious of a date of birth. I do not have it at this moment. I'm sorry. Okay. Your argument would mean any Cuban who is paroled and departs without getting advanced permission to depart hasn't departed, right? Has not legally departed. Okay. So that applies to everybody. It applies to anyone who is currently- So they have no obligation to follow the advanced parole requirements? Well, of course- Or advanced departure. Sorry. Wrong word. Advanced parole. Of course, they would be subject to, when they applied for readmission, they're subject to the CBP's officer decision to, in their discretion, whether they want to or not, is clear that someone who possesses parole is not considered legally within the United States. They are considered at the border, detained, seeking to be admitted into the United States. And it goes to reason, if they are not considered legally within the United States, they cannot legally depart the United States for the purpose of the departure bar. I thought the whole thing about this was to have a 10-year period of illegal presence, and the government didn't do anything about it. And so, therefore, you can apply for LPR. May I briefly conclude? Okay. Is that right? To answer your question. Okay. I mean, so, I mean, what you're trying to seek, the prerequisite to what you want, is 10 years of illegal presence, right? Unlawful presence. Is that right? Not exactly. The unlawful presence, if the unlawful presence is over a year, in which case, Mr. Revello's unlawful presence was over a year. Right. And they then physically and legally depart the United States and seek admission within 10 years of that physical and legal departure, then USCIS can apply this bar of inadmissibility to the applicant. Okay. Tell me what your client wants to have happen in his case. He wants to be recognized for what? Well, specifically, what Mr. Revello wants, nothing more, relates to the procedural posture of this case. This case was dismissed on a 12B6 motion to dismiss. Therefore, he only requests that this case be remanded for the district court to further consider his plausible argument that because his parole status, he did not legally depart the United States and therefore cannot be held inadmissible pursuant to the 1182A9BI2 departure bar. Let me ask you this. I take it your argument is these regulations on termination of parole basically don't apply because of the CAA. No, Your Honor. Okay. As defendants clearly point out, a parole does terminate upon physical departure. Here, Mr. Revello's indefinite parole did in fact terminate upon physical departure. That's fine. That is why when he reapplied for admission that same day, the CBP officer had to grant him a new parole into the United States. However, the fact that that indefinite parole did in fact terminate upon his physical departure doesn't change the fact that while he was physically present in the United States, the case law is clear that he was not legally considered to be, quote, legally within the United States, end quote. But he could have sought advanced parole before he left and he didn't do that. He could have. It was an inadvertent error on his part to make this delivery. He was a truck driver. He left and came back within a matter of hours. But you're correct, Your Honor, he did not seek an advanced parole. Thank you very much. I see that I've gone over my time. Thank you. Now for the United States, Mr. Leggett and Mr. Dominguez, you still have your reserved two minutes for rebuttal. If I may please the Court, I'm Troy Leggett for Federal Defendants. What's your position on jurisdiction? I will be honest and be upfront that I'm not familiar with the opportunity to brief that for the Court if you wanted a thorough discussion. However, it is my understanding that this is the review of the denial of an I-485 adjustment application, a statutory review of that denial under the APA. And because it's a statutory denial, it is not a discretionary decision. And therefore, it's not precluded by 8 U.S.C. 1252B. And the Court would have jurisdiction. I say that not being familiar with the circuit split that you're discussing and would really like the opportunity to look into that more. He basically said that the removal, if he were in removal, that these questions that he wants answered now, the, his opportunity to get LPR status would not be addressed in that removal proceeding. His, he, his adjustment, an immigration judge under certain circumstances could adjust status because of, because he's an arriving alien. They could not for him. They could address the issue of whether or not he's inadmissible. At this time, he's not in removal proceedings and therefore. Okay. But what he wants is adjustment of status. And you're saying in this particular circumstances, the removal proceedings cannot get him that. Correct. I don't understand that because I've had cases in removal where they are trying to get adjustment of status. Like, just like they try to get asylum or withholding of removal. There's an application for adjustment of status. So, you never can seek adjustment of status in removal proceedings? You can, but not if you're an arriving alien. I see. Um, and there is a back and forth on USCIS. Tell me the, something I would cite if I were writing this to say, the remedy he's seeking here, he can't get a removal. So therefore, we have to have jurisdiction because he can't get it. Your Honor, I did not come prepared with a cite on that issue. I'm glad to provide it with the court after. Okay. I want another step back because I keep, I keep getting confused. I think I understand this. Why is he an arriving alien? He's arriving alien because- Because he has, he- Never been admitted? He's never been admitted. Okay. He was paroled into the United States for one year when he originally came. Okay. I just want to write that down. Okay. Parole is defined under 8 U.S.C. 1182 D5, and it is not a lawful status. And it does not change an alien's lawful status. I understand people who are paroled are not here. They are here, but what parole says is they don't get a lawful status. They aren't a permanent resident. When you come into the country, you usually need a visa, which gives you lawful status, or adjustment of status, which gives you lawful status. These folks don't. So, he's been an arriving alien ever since he got here? Yes, Your Honor. And that's never changed? Never changed. Even when the parole, he overstays his parole time? I know he then got indefinite parole, but the first time, he still is an arriving alien. His first entry was a one-year parole, and he overstayed that. And then he started accruing unlawful status. That accrued for about five years. All right, so his parole expires, but he remained in the U.S., and he began to accrue unlawful presence in 97. Correct. And he said he accrued 10 years. Let's see. No, he says up to 2002, he filed his I-485 to adjust. Yes, Your Honor. And then it was denied. So, that was the first accrual of unlawful presence, right? Correct. And then, how long did that go on? He accrued about three months more before he received parole again, which this time, the time period was for an indefinite period. That was in 2005? That was November 9, 2005. Yes. So, then he's got three years, eight years unlawful presence. His unlawful presence didn't begin until 1997. So, he had unlawful presence from 1997 to 2005, which was about five years. And then he had about... 1997 to 2005 is not five years. I'm sorry. It's eight years. I'm sorry. Till 2002. So, 2002 is when he filed his I-485. And then, that gives him... He's no longer unlawful status? By filing an I-485? By agency regulation and practice, when you file an adjustment application, your accrual of unlawful status ends. Okay. Okay. And so, his lawful presence starts on February 26, 2002. And that just continues until he's granted indefinite parole until 2005, or not? His unlawful presence started on April 1, 1997. That is when... It ended on 2002, when he made his first adjustment of status petition, which you call by some number. And he had... And then, does he go into unlawful status again? While his application was pending from February 22 until September of that year, when it was denied, his unlawful status is told. When it was denied, it started again and ran for about... If he's still unlawful, it's just the cruel time, is it? Cruel time. Yes. Okay. So, the accrual... So, when did the accrual time start again? When his application was denied, September 25, 2005. Okay. And then, he was granted parole less than three months later on November 9, 2005. That's where you get the three months. I see. Yes. Okay. All right. What is the 10 years he's trying to accrue of what? The 10 years under that inadmissibility bar is after someone who's accrued one year of unlawful status departs the United States, they must wait 10 years before they can seek admission again. Okay. So, he hadn't done that? He hasn't done that. He has to depart, stay outside the United States for 10 years. It was the purpose of this inadmissibility bar. And then, he can come back in the United States. That doesn't have anything to do with this case then? Not directly, Your Honor. Okay. All right. So, what is he trying to get? Whether he can get it or not is another issue. As you understand, he's trying to get statutory eligibility for what? LPR? For LPR status. Okay. And what is keeping him from getting statutory eligibility for LPR? He's trying to get LPR status through the Cuban Adjustment Act and just like all adjustment, an alien who applies has to be admissible. There are many bars that deem an alien inadmissible to the United States, from criminal to health to immigration violation. He has to be admissible and what is keeping him from being admissible? Because he departed the United States after accruing more than one year of unlawful status. Unlawful presence, I'm sorry to clarify. More than one year of unlawful presence. He departed and therefore, he's inadmissible and cannot return for 10 years. All right. Tell me why the purpose of that. I'm not questioning. I'm just trying to understand. Because he departed the United States after accruing more than one year of unlawful status. Yes, Your Honor. The inadmissibility bar, that bar is in effect an almost an additional penalty on aliens who come to the United States and are here with unlawful presence. There's several layers of it. If you're here for less than six months, you have to wait three years before you can come back. It is what Congress put in statute in 1997 to address the issue of aliens coming here, staying with unlawful presence. Okay. Yeah. Now, I think the argument, well, there's several arguments, but the rules for Cubans, the government argues, do not change any of this. That the CAA is totally separate and that this departure bar business still exists no matter what, right? Yes, Your Honor. And there was no intention of the CAA to change this general rule. Okay. Is that what the government says? Yes. Okay. This minimal departure, which there's several things he could have done. He could have gotten this, I don't know, what is it called? Advanced parole? It's called advanced parole. Actually, in the regulation, it's called advanced authorization. It's called advanced authorization. Okay. Before you depart, in advance of departure. Okay. And is the purpose of that to keep track of people? I mean, what's the purpose? Advanced authorization, applicants for adjustment, refugees, and aliens here on parole seek advanced authorization because number one, if they have a pending application and they leave, it's considered abandoned. That was the primary reason. Number two, to get back to the United States, to board a plane to come back to the United States, you need a travel document and it will give you a travel document. After matter of Arabelli, and matter of Arabelli is the BIA decision key to all of this and explains many of these concepts. It also, if you seek advanced authorization and receive it, you can then depart and seek readmission and not be subject to this inadmissibility bar. That applies to everybody. And so a Cuban who wants to leave gets this. They can go wherever they want and come back. Yes. But he didn't do that in this case. Yes, Your Honor. You're saying after April 24, 12, when he drove the truck over, when he came back in, he couldn't come back in as an arriving alien for 10 years? Yes, Your Honor. And not be subject to this inadmissibility bar. Did the immigration officer at the border have any discretion to let him back in? Yes, there is a footnote in Arabelli that the Arabelli decision was amended. And even if an alien gets advanced authorization, the officer at the border has discretion to issue it. Even if he fails to get it, the officer at the border, on the way in or the way out? I'm sorry. If he gets advanced authorization, departs. When he comes back, the officer at the border still has discretion to consider whether or not to give him that, to parole him back in. Oh, really? Yes. It doesn't work the other way? Anyone can depart. Anyone can depart. But when he's coming back, he failed to get that advanced authorization. The immigration officer can't issue it at that point? No. When you're outside the United States, aliens can't apply for it to come into the United States. But that's usually to submit an application. You've filed for adjustment outside of the United States and you want to be able to come in. You apply for advanced authorization to get a travel document to come in. This doesn't affect the fact that you departed? No. Okay. I was just wondering if there was some way to undo the departure. What you're saying is no? Yes. Having failed to get the advanced authorization, you can't undo the departure. That's your view? Exactly. Okay. I want to go back to it. He'd have to wait 10 years to come back and you said because he left after one year of unlawful presence, you said it's the ineligibility bar that keeps him. That's the 10 years. Tell me again what that is. It's an inadmissibility bar. Okay. It's at USC. He's inadmissible for 10 years when he went over to Canada? Yes. When he, he had to wait 10 years to come back or if he did, he would become inadmissible under this provision. Having been here unlawfully for more than one year, he departs and he gets subject to the 10 year bar. That's, that's how you say the regulations work. Yes. All right. And the 10 year inadmissibly bar is what section? A, USC 1182. A, 9B, little I-2. Does that sound like it? Yep. Okay. I'm just making sure I've got this right. Now, tell me why the government, I mean, y'all have so much discretion here. Y'all not seeking to deport him, right? At this point, no, Your Honor. He doesn't seem to have any convictions, right? He does have a criminal conviction and he received a waiver for that inadmissibility of his conviction back in 1995 for grand larceny. Right. And y'all granted the waiver? Yes, it was under a different standard. Well, but it's I-601 waiver and it was waived. Yes, but there was a, for that waiver, for a crime committed more than 15 years ago, he just had to show he was rehabilitated. Okay. And therefore, he could get, he got a waiver from that inadmissibility bar. His second inadmissibility bar was the 10 year bar. Um, that one, he had to show undue hardship to a qualifying relative. Okay. And, and do you know his date of birth or how? It is August, August 2nd, 1969. So he was 23 years old when he entered. Okay. And what case law are you relying on for this, just, is it one day departure? It was not even a day. It was a few hours. He delivered something to Canada and came back. Why, why, why did they not catch him at the border then? How does he get back in? He's on a truck and he didn't have to show any papers. They just think he went out, came back. Before wet foot, dry foot, there was a, he was Cuban and therefore he was paroled back in. He would still, he was paroled back in for one year, which allowed him to, which would have allowed him to apply for adjustment again under the Cuban Adjustment Act. That was the policy at the time. He went out. Very important to this case, when parole allows an alien to be in the United States and by regulation, any parole for any period of time terminates when the alien departs. Okay. No parole allows for in and out, in and out. Okay. So his indefinite parole terminated at the time he departed. Okay. So he's re-paroled or paroled anew for one year on the same day. Exactly. Okay. Okay. And then he starts filing petitions for adjustment of status in 2013 and then again in 2015. Which one are we working off of? We are, it's the June 10th, 2016 last denial. It was for the application filed in 2013. And that was denied both the application and the waiver for the same reasons. Okay. Which was that he's inadmissible for being unlawfully present from 1972 and then departing. Yes, Your Honor. That's why his adjustment application was denied. Okay. And the waiver is? Just to be clear, the waiver would have waived that inadmissibility ground. Right, right. It would have been okay if he could have demonstrated. Can you waive that inadmissibility ground? Yes. So y'all have the power, you have the government, the USCIS could waive that inadmissibility ground. If the applicant demonstrates an undue hardship to a qualifying relative. Okay, does he have children here or anything? He has children, but children don't qualify as relatives for a waiver of that. It can only be a parent or a spouse. Okay. And he applied for a waiver based on his father and it was denied. So this waiver is only for a hardship for a parent or a spouse. But he has a parent here. Yes. So why was it denied? Because he couldn't demonstrate undue hardship. On the parent. On the parent. Okay. Very complicated. Are we done? I don't know the answer, but I think I know his son first. Okay. On that point, just to be clear, he originally submitted a waiver application for his son. It was denied. And then USCIS reopened for his father and it was denied. My brief mistakenly says the last waiver was for his son and it was denied. So I thought I should... You're over your time, but you've been asking the questions. All right, Mr. Dominguez. Okay. Thank you, Your Honors. It's important to clarify that Mr. Ravello, upon reentering the United States on April 24, 2012, received the same exact type of parole that the petitioner in matter of Arabelli received, a parole under 8 U.S.C. 1182 D-5. Although he did not receive an advanced authorization for it, the... When you receive an advanced authorization, you don't actually receive the parole prior to leaving. If that was the case, it would terminate upon departure, as defendants say and the regulations say. But it's nothing more that they will be favorably considered for parole upon reapplying for admission into the United States. Here, Mr. Ravello was reparoled into the United States. The CBP officer made the discretionary decision to reparole him into the United States the same way the CBP officer in matter of Arabelli and Yarabelli made a discretionary decision to reparole them into the United States. However... But I think his argument is, or he said the regulations provide, that once you depart without authorization, your then existing parole terminates. Correct. That is correct. And in this case, Mr. Ravello's indefinite parole he had previously received did terminate. However, that does not preclude the fact that, while Mr. Ravello was physically present in the United States under this indefinite parole, pursuant to Supreme Court precedent, he was not considered, quote, legally within the United States. Justice Clark was clear in his decision of Langmey, Ma versus Barber, that an alien who was present in the United States of parole is not, quote, legally within the United States. Didn't he just mean they weren't admitted? No. He meant that, theoretically and legally, they are not considered to be within the United States. Therefore, it stands to reason, if they are under a grant of parole, they are not legally considered in the United States. They cannot legally depart the United States for the purposes of the 1182A9BI2 departure bar. May I briefly conclude, Your Honor? Sure. And with that case, Mr. Ravello respectfully requests that this court reverses the district court's decision to grant the motion to dismiss and find that he has presented a plausible claim upon which relief can be granted for the district court to further consider upon remand, which he respectfully requests that this court grant. Thank you. Thank you. Case is submitted. The next case in the morning, Gabrielle.